IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY McCOY,

       Plaintiff,

v.                                                          Civil Action No. **3:11CV639**

DOCTOR KING,

       Defendant.

### MEMORANDUM OPINION

Anthony McCoy, a Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings

this action pursuant to 42 U.S.C. § 1983.[1]  McCoy contends Doctor. King denied him adequate

medical care in violation of the Eighth Amendment.[2]  The matter is before the Court on the

Court's obligation to review complaints under 28 U.S.C. § 1915(e)(2) and Dr. King's Motion for

Summary Judgment.  McCoy has responded.  These matters are ripe for disposition.

### I. Summary of Relevant Allegations and Preliminary Review

McCoy has "two bulged discs" and "disc herniation."  (Compl. 5, ECF No. 1.)[3]  In

February of 2011, a neurosurgeon told McCoy that McCoy should "continue the Vicoden

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and
unusual punishments inflicted." U.S. Const. amend. VIII.

[3] The Court employs the pagination assigned to McCoy's submissions by the Court's
CM/ECF docketing system.

[McCoy] was taking." (*Id.* at 6.)  On August 8, 2011, an orthopedic specialist at the Medical

College of Virginia told McCoy that he wanted McCoy to continue with his physical therapy and

to follow up with an appointment with a neurosurgeon. (*Id.* at 5.)  McCoy insists that he should

have had a follow up appointment with the neurosurgeon in August of 2011. (*Id.* at 6.)  On

September 1, 2011, at Sussex I State Prison ("Sussex I"), Dr. King saw McCoy. (*Id.* at 3, 5.)

McCoy suggests that he had not been doing his physical therapy because of the pain. (*Id.* at 5.)

Dr. King refused to prescribe Vicodin, a narcotic, but instead prescribed Vulterin, a non-narcotic

pain reliever. (*Id.* at 5–6.)  McCoy requests that he be provided with adequate pain medication to

conduct his physical therapy, to have a follow-up appointment with a neurosurgeon and to file

suit under the Americans with Disabilities Act ("ADA"). (*Id.* at 6.)  Accordingly, the Court

deems McCoy to raise the following claims:

> **Claim One**   In violation of the Eighth Amendment, Dr. King failed to provide McCoy
> with adequate pain medication.
>
> **Claim Two**   In violation of the Eighth Amendment, Dr. King failed to ensure that
> McCoy had a follow up visit with the neurosurgeon in September or
> October of 2011.
>
> **Claim Three**  Dr. King violated McCoy's rights under the ADA by failing to provide
> proper medical care.

This Court must dismiss any action filed by a prisoner if the Court determines the action

"fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(ii).  To establish

a prima facie case under Title II of the ADA, McCoy must allege facts that plausibly suggest

that: "(1) he has a disability; (2) he was either excluded from participation in or denied the

benefits of some public entity's services, programs, or activities for which he was otherwise

qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his

disability." *Miller v. Hinton*, 288 F. App'x 901, 902 (4th Cir. 2008) (citing *Constantine v.*

*George Mason Univ.,* 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir. 1999)).  Insofar as McCoy claims Dr. King violated his rights under the ADA by failing to provide proper medical care, he fails to state a claim.  *Id.*  The "ADA is not 'violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.  No discrimination is alleged; [McCoy] was not treated worse because he was disabled.'"  *Id.* (quoting *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)).  Accordingly, Claim Three will be DISMISSED.

## II.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party."  *United States v. Carolina Transformer Co.,* 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).  However, a mere scintilla of evidence will not preclude summary judgment.  *Anderson,* 477 U.S. at 251

(citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Dr. King submitted, *inter alia*, his affidavit (Mem. Supp. Mot. Summ. J. Ex. F ("King Aff."), ECF No. 16) and copies of McCoy's medical records (*id.* Ex. E.) In response, McCoy submitted an unsworn response to the Motion for Summary Judgment and copies of some of his grievances and other correspondence with prison officials. (*See* ECF No. 19); *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (observing that unsworn argument in a memorandum fails to constitute admissible evidence). In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motion for Summary Judgment.

### III. Summary of Pertinent Facts

McCoy arrived at Sussex I State Prison on January 4, 2011. (King Aff. ¶ 4.) At that time, McCoy reported difficulty ambulating. (*Id.*) Dr. Gebreyes ordered "[a] bottom bunk, tier, and pod" for McCoy. (*Id.*) On January 12, 2011, a doctor evaluated McCoy for his back pain. (*Id.* ¶ 5.) McCoy "reported that he had a history of severe low back pain and was unable to sit, walk, or stand as a result." (*Id.*) The doctor reviewed a prior MRI of McCoy's "lumbar spine and prescribed Vicodin 500/5 1–2 tablets three times per day for one month." (*Id.*)

4

McCoy remained in the medical observation unit from January 12, 2011 through January 21, 2011. (*Id.* ¶ 6.) During this period McCoy "walked with a cane and often reported pain 10 on a scale of 10 despite the administration of Vicodin." (*Id.*) "A follow up medical evaluation was conducted on January 31, 2011 by Dr. Gebreyes. [McCoy] requested to be kept on the observation unit although he initially refused to be seen by the doctor. The plan was to discontinue observation status but his Vicodin prescription was to continue and he was again to be housed on a bottom tier, bottom floor, and a bottom bunk." (*Id.* ¶ 7.) "[F]rom January 31, 2011 through February 15, 2011, [McCoy] remained on the observation unit and continued to receive Vicodin as needed for pain." (*Id.* ¶ 8.)

On February 23, 2011, Dr. Eric Merrill, a neurosurgeon at Medical College of Virginia ("MCV") in Richmond examined McCoy. (*Id.* ¶ 9.) Dr. Merrill noted:

> [McCoy] was being seen for evaluation of blunt trauma to the lumbar spine region. He reported significant pain with ambulation. A review of his MRI from October 22, 2010 was conducted. This showed mild lumbar spondylosis with moderate left L5–S1 foraminal stenosis and mild bilateral L4–5 foraminal stenosis without canal stenosis.

(*Id.*) "Dr. Merrill indicated that these findings 'appeared to be unrelated to the extent of the patient's current symptoms.'" (*Id.*) Dr. Merrill concluded no need existed for surgical intervention at that time and that McCoy "should simply be treated with oral analgesics 'as appropriate and effective.'" (*Id.*)

Upon McCoy's return to Sussex I, Dr. Gebreyes discontinued Vicodin and prescribed Motrin, a non-narcotic oral analgesic. (*Id.* ¶ 10.) On May 18, 2011, McCoy began physical therapy at MCV. (*Id.* ¶ 14.) Throughout the time period of June 8, 2011 until June 25, 2011, McCoy "was supposed to be performing physical therapy exercises in the prison. [McCoy] reported epigastric pain and medication was prescribed for this. The records indicate that

[McCoy] was taking Tylenol for back pain." (*Id.* ¶ 15.) On June 8, 2011, McCoy "reported severe back pain after some sort of forceful movement that day.  Examination did not reveal any observable injury or defect." (*Id.* ¶ 16.)

Dr. King first saw McCoy on August 4, 2011. (*Id.* ¶ 17.) McCoy stated that he had not been able to walk "since being shaken when he was lying down on his bed in September 2010, and he told [Dr. King] that he needed Vicodin." (*Id.*) Dr. King reviewed McCoy's chart, including the notes from 2010, and his prior MRI. (*Id.*) Dr. King concluded McCoy's "alleged inability to walk was possibly malingering." (*Id.*) Nevertheless, Dr. King prescribed hot and cold compresses, advised McCoy "to continue the extra strength Tylenol, added a prescription for Robaxin 750mg twice a day (a muscle relaxer), and initiated the paperwork for a follow-up visit with the neurosurgeon at MCV." (*Id.*)

On August 8, 2011, Dr. Phillip Taylor, an orthopedic surgeon at MCV, examined McCoy. (*Id.* ¶ 18.) According to Dr. Taylor's notes, McCoy reported severe lower back pain "to the point that he was now confined to a wheelchair and was unable to ambulate secondary to the pain in his back." (*Id.*) "Dr. Phillips noted that the patient had been seen by neurosurgery who had recommended conservative treatment including physical therapy, but the patient reported that he had only done physical therapy twice because of the pain." (*Id.*) Nevertheless, Dr. Taylor's examination revealed that McCoy "was in no acute distress. Sensation was intact and x-rays were performed which were unremarkable." (*Id.*) Dr. Taylor "prescribed Voltaren 75mg twice a day (a non-steroidal anti-inflammatory similar to ibuprofen) to allow Mr. McCoy better participation in his physical therapy. Dr. [Taylor] indicated that there was no need for further follow up with the orthopedic clinic since he was being followed by neurosurgery." (*Id.*)

6

McCoy requested to see Dr. King on September 2, 2011. (*Id.* ¶ 19.) "In anticipation of this visit, [Dr. King] performed a thorough medical record review on September 1, 2011." (*Id.*) When Dr. King "saw [McCoy] on September 2, 2011, [McCoy] continued to state that he was unable to walk because of his back pain and insisted that [Dr. King] prescribe Vicodin for him before he could do the back exercises previously recommended by the orthopedic surgeon." (*Id.*) Dr. King conducted a physical assessment, "prescribed hot and cold compresses, prescribed Mobic 7.5mg daily (an anti-inflammatory used for joint pain) and Nortriptyline, encouraged him to do his back exercises, again noted the referral to the neurosurgeon, and asked Mr. McCoy to follow up with him [(Dr. King)] in one week." (*Id.*)

On September 8, 2011, Dr. King saw McCoy, encouraged him to do his exercises, apply the hot and cold compresses, and to continue his medications as prescribed. (*Id.* ¶ 20.)

On October 5, 2011, Dr. Conley saw McCoy in the neurosurgery clinic at MCV. (*Id.* ¶ 21.) Dr. Conley noted: "'Apparently, at times while at his correctional facility [McCoy] is ambulatory without difficult[y] and at other times when in certain company he is unable to walk. Patient denies any difficulty with walking.'" (*Id.*) McCoy reported that he had only done physical therapy twice because he felt too sore to participate. (*Id.*) Dr. Conley examined McCoy and noted that his "history did not correspond with the examination or with radiographic evidence of pathology. [Dr. Conley] encouraged Mr. McCoy to continue with physical therapy and felt that central muscle weakness may be a significant component of his back pain." (*Id.*) Dr. Conley concluded that "there was no need for surgery, and conservative management was recommended." (*Id.*) Dr. Conley specifically stated, "'[McCoy] does not need to be scheduled for a return visit to the neurosurgery clinic.'" (*Id.*)

Dr. King next saw McCoy on October 6, 2011 and prescribed "Robaxin 750mg, two pills, twice a day for 90 days for . . . back pain." (*Id.* ¶ 22.)

Dr. King "did not see [McCoy] again until May 23, 2012. At that time, he was seen only for complaints of abdominal pain. Although Mr. McCoy did have some additional visits for back-related complaints, he was seen by another physician at the facility during that time." (*Id.* ¶ 23.)

### IV. Analysis

To survive a motion for summary judgment on an Eighth Amendment claim, McCoy must demonstrate that the Dr. King acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

In Claim One, McCoy claims Dr. King acted with deliberate indifference by failing to provide him with stronger pain medication. "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). McCoy demonstrates no extreme circumstances here. *See, e.g., Martinez v. Mancusi*, 443 F.2d 921, 923–25 (2d Cir. 1970) (granting relief when prison doctor prematurely forced prisoner plaintiff, without hospital ordered pain medication, to walk out of hospital and stand for meals after

9

plaintiff had leg surgery for which hospital specialist had ordered plaintiff to lie flat and not to walk). Rather, the record reflects that Dr. King's judgment that McCoy did not require stronger pain medication largely coincided with the judgments of Dr. Merrill and Dr. Taylor. McCoy fails to demonstrate that Dr. King acted with deliberate indifference by failing to provide stronger pain medication. *See Diaz v. Turner*, 160 F. App'x. 360, 362–63 (5th Cir. 2005) (finding inmate's disagreement with decision by medical personnel not to provide him with non-prescription medication on demand fails to constitute deliberate indifference to medical needs); *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) (concluding defendants' decision to prescribe Tylenol or Motrin to manage prisoner's pain and to administer Demerol or Morphine only when necessary did not constitute deliberate indifference). Claim One will be DISMISSED.

In Claim Two, McCoy faults Dr. King for failing to ensure that McCoy attend a follow up appointment with a neurologist in September or October of 2011. When Dr. King examined McCoy on August 4, 2011, Dr. King initiated the paperwork to have McCoy examined by neurologist. On October 5, 2011, Dr. Conley in the neurosurgery clinic at MCV saw McCoy and saw no need to alter McCoy's course of treatment. McCoy fails to demonstrate that Dr. King acted with deliberate indifference by failing to accelerate McCoy's appointment with the neurosurgeon or that any delay in the appointment caused McCoy substantial harm. *See Webb v. Hamidullah*, 281 F. App'x 159, 166–67 & n.13 (4th Cir. 2008) (explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm.'" (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000))). Accordingly, Claim Two will be DISMISSED.

## V. Conclusion

The Motion for Summary Judgment (ECF No. 15) will be GRANTED. McCoy's claims will be DISMISSED. The action will be DISMISSED.

The Court notes that McCoy now has at least three strikes under 28 U.S.C. § 1915(g).[4] *See McCoy v. Clarke*, No. 3:11CV731, 2013 WL 4749912, at *3 (E.D. Va. Sept. 3, 2013); *McCoy v. Teklu*, No. 3:11CV650, 2013 WL 3873662, at *5 (E.D. Va. July 24, 2013) (dismissing complaint where McCoy rasised claims about back problems); *McCoy v. Gebreyes*, No. 3:11CV474, 2012 WL 6706150, at *4 (E.D. Va. Dec. 26, 2012) (dismissing another complaint where McCoy complained that he had received inadequate medication to treat his pain); *McCoy v. Kelly*, No. 3:11CV643, 2012 WL 2396863, at *3 (E.D. Va. June 25, 2012) (dismissing a complaint where McCoy complained, *inter alia*, that his rights had been violated by limitations on his use of the grievance procedure). Given the undisputed evidence that McCoy's back pain can be successfully treated with non-narcotic analgesics, the Court will look with skepticism on any future suggestion from McCoy that he faces an "imminent danger of serious physical injury" by the failure to provide proper medication for his back problems. 28 U.S.C. § 1915(g).

An appropriate Order shall issue.

Date: *11-18-13*
Richmond, Virginia

/s/
James R. Spencer
United States District Judge

---

[4] That statute provides:

> In no event shall a prisoner bring a civil action [*in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).